Begoña Elena Riera
12044 Preston St. Apt. 24
Grand Terrace, CA 92313
(951) 335-1828
ATTORNEY-IN-FACT

LODGED

**EMERGENCY ATTENTION REQUESTED**

2014 JUL -9 PM 4:32
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY:_____

FILED 2014 JUL 10 AM 10:34 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

EDCV14-01404 GHK(AS)

RODOLFO J. ROLDAN RIERA )
A.K.A RODIFO J. ROLDANRIERA )
        Petitioner, )
DEPARTMENT OF HOMELAND SECURITY )
A. NIEL CLARK, WARDEN, MR. FAUTS DEPUTY )
WARDEN, DR. PATEL, MEDICAL DIRECTIOR )
DR. LAWRENCE, STAFF PHYSICIAN, NURSE )
PRACTITIONER PERKINS, STAFF PHYSICIAN )
DR. ELATROZY STAFF PSYCHIATRIST, DR. )
PETER N. NOVALIS STAFF PSYCIATRIST, )
Et. al )
        Defendants, )
_____ )

Case No.

**REQUEST FOR EMERGENCY INJUNCTIVE RELIEF**

HERE COMES RODOLFO J. ROLDAN RIERA Plaintiff in the above mentioned matter to declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**INTRODUCTION**

Petitioner's parole was revoked on February 10, 2014, and he was placed under the supervision of the San Bernardino Sheriff's Department West Valley Detention Center. Petitioner obtain a court order; mandating he gets his medications as prescribed in the Superior Court of California, San Bernardino County, on April 01, 2014. Petitioner was transferred from

1  the custody of the San Bernardino Sheriff's Department; to the custody of The Department of
2  Homeland Security on May 09, 2014. Petitioner was placed under the supervision of Adelanto
3  Detention Center, awaiting his removal hearing. Ever since. Petitioner contends that he's not
4  allowed to make private calls to attorneys as outlined in the detainee handbook (see attached
5  page from detainee handbook and GEO memo on legal calls). Adelanto Detention Center
6  Medical Staff is refusing petitioners request for a pain medication that will treat his pain. In clear
7  violation of the court order petitioner received on the day of April 1, 2014 at the San Bernardino
8  Superior court (see attached court order). Also Deputy Warden Faust, and East yard Intake Staff
9  refuse to give petitioner the evidence that is in his property. Which petitioner not only needs it to
10 present and adequate defense, but was also ordered by the judge to get such evidence (see
11 attached kite dated 06/ /14)

## CLAIM I.

13 Petitioner has some medical records, and bottles of the psychiatric medication petitioner used
14 to take before his incarceration (see attached property report); that petitioner would like to
15 include as evidence in his competency hearing. On the day of June 25, 2014 as petitioner was in
16 east intake getting ready to be transported to west yard for his competency hearing he asked Mrs.
17 Cervantes and other property room GEO's, that petitioner needed this evidence for his hearing.
18 Mrs. Cervantes and the other geos denied petitioners request, stating that petitioner couldn't have
19 access to pill bottles or his medical records. Petitioner asked them if they could take it
20 themselves to west yard and turn it over to the bailiff, that way petitioner didn't have access to
21 the medications, or records. East yard staff refused stating that they weren't going to give the
22 evidence to the bailiff. Plaintiff has requested his medical records, and for his medicine bottles to
23 be scanned several times, but his request has been denied by Deputy Warden Faust, and Mrs.
24 Cervantes. On July 01, 2014 Petitioner showed Mrs. Cervantes a kite that was signed by

1  Sherwood LVN stating that anything in petitioner's property could be scanned. Mrs. Cervantes
2  took the Kite, and returned about 20 minutes later stating that Sherwood LVN made a mistake,
3  and she crossed out the part that stated petitioner was allowed copies of his property (see
4  attached kite dated 06/  /14)

## CLAIM II.

6  Geo staff including but not limited to Sgt. Brown, Sgt. Cooper, and Lieutenant. Bowdre. Have
7  been greatly limiting petitioners request for Private unmonitored calls. Petitioner has several pre-
8  approved kites signed by various staff members allowing petitioner to make attorney calls. Staff
9  either blatantly don't allow petitioner access to an unmonitored phone, tell petitioner he was
10 three minutes to make the call, or just don't approve the call. Due to this petitioner's ability to
11 seek representation in his removal hearing, and to communicate with his appellate attorney, and
12 Courts have been greatly hindered (see attached copies of request for legal calls). Petitioner filed
13 two grievances against Sgt. Copper and Lt. Bowdre on June 06, 2014. On June   , 2014 Petitioner
14 was the subject of reprisal and harassment by Sgt. Mohamed and Mrs. Woelke (the grievance
15 coordinator). Mrs. Woelke stated that she was going to report petitioner to ICE for "abusing the
16 grievance system." As petitioner and Mrs. Woelke where passing past the Liutenants office Mrs.
17 Woelke stopped and entered the Lt's office and spoke to him shortly after petitioner was called
18 in (Sgt. Mohamed was passing by and overheard the conversation and at this time also entered
19 the Lt's office). Petitioner was told by Mrs. Woelke and Lt McCluster that petitioner should use
20 the phone in the dorm to make his calls to attorneys. Petitioner stated that his calls to attorney's
21 were priviledge communications and confidential and couldn't be done in a phone that was
22 monitored such as the phones in the dorm (see attached GEO memo on unmonitored calls). Sgt.
23 Mohamed started to threatened petitioner with sending him to segragetion for abusing the legal
24 call system and the grievance system. Mrs. Woelke stated that she was taking petitioner to make

1 his legal calls at East yard intake office. When they arrived to intake office Mrs. Woelke was
2 coming to close to petitioner, so petitioner told her that this was a privaledge communication and
3 she couldn't be so close as to hear it. Mrs. Woelke told petitioner to hang up the phone, and once
4 again threatened petitioner with calling ICE on him. Petitioner at this time told Mrs. Woelke that
5 he would like to speak to ICE. Mrs. Woelke stated that she was "taking petitioner to speak to
6 ICE" when they ran across Sgt. Mohamed next to the holding tanks in East Intake. Mrs. Woelke
7 stated to Sgt. Mohamed that petitioner told her not to stand close to her and "was not showing
8 coroporation towards Mrs. Woelke, and stated that he wanted to speak to ICE. at this time Sgt.
9 Mohamed put petitioner in a holding tank with other detainess and slammed the door behind
10 him. Petitioner was there for awhile. Petitioner spoke to Chief Johnson about"what was
11 happening, and deputy warden Faust ( his is when deputy warden faust told Mrs. Cervantes not
12 to copy the medicine bottles) they both stated that petitioner was placed in the holding tank
13 "because he was becoming irate with staff." After their conversation Deputy fayuts told
14 petitioner that he was going to go talk to medical about getting petitioners medications "because
15 it look like he needed them" and placed petitioner back in the holding tank. Soon after he came
16 back and told petitioner that he in fact did have a court order to get his medications and spoke to
17 the doctor about getting his medication, and petitioner would be seeing the doctor soon(last time
18 I saw deputy faust he denied saying this).

19 **CLAIM III.**

20 ICE agents including, but not limited to Agent Caban, Agent Garcia, Agent Carmack, and Agent
21 Valdez, are not allowing petitioner access to the legal materials he needs to prepare an adequate
22 defense in his removal proceedings. Petitioner spoke to Mr. Williams the law librarian, and he
23 stated that per the detainee handbook if petitioner needed any legal materials not maintained in
24 the law library he needed to get them from ICE. Approx. June 13, 2014 petitioner sent a detainee

1  request for to his deportation officer Agent Caban requesting legal materials that were not
2  maintained in the law library. Agent Caban responded stated that per ICE supervision, for legal
3  assistance or documents you must rely on Esperanza for assistance (see attached detainee request
4  form dated 6/13/14). The morning of June 18, 2014 petitioner spoke with his deportation officer
5  (Agent Caban) regarding getting legal materials that he needed to prepare an adequate defense.
6  Agent Caban stated that per ICE supervisor Agent Valdez. ICE only needed to provide petitioner
7  with the materials that are in the law library anything else petitioner has to get from his family or
8  outside free legal services. The afternoon of June 27, 2014 petitioner spoke to Agent Garcia
9  regarding getting access to legal materials petitioner needed to prepare an adequate defense.
10 Agent Garcia told petitioner that ICE didn't have to help me with my case. Petitioner proceeded
11 to read the detainee handbook page regarding Law Library which states in part " Detainees
12 requesting legal reference materials not maintained in the Law Library should submit a written
13 request to ICE (supplemental detainee handbook page 15). Mr. Garcia proceeded to say
14 nonchalantly "ok then ask your family to send it to you." This blatant and wanton act of
15 nonfeasance is greatly hindering petitioner's ability to prepare a defense and his case. Petitioner
16 doesn't even have access to the Immigrations and Nationality Act, which is what petitioner, is
17 being charged of violating. Thus petitioner cannot respond to the charges because he doesn't
18 know exactly what his being charged with.

## CLAIM IV.

20 Petitioner was transferred from the custody of the San Bernardino Sheriff's Department, to the
21 custody of DHS on May 09, 2014. While petitioner was in the San Bernardino ICE office;
22 petitioner was given all his medications as prescribed by ICE Agent Wheeler. Petitioner arrived
23 to Adelanto Detention Center (ADC) later that evening. When he was interviewed by Jaime
24 Harrtis, LVN. Petitioner was told that she couldn't give petitioner his medications he had in his

1  property because they weren't prescribed by an ADC physician, and that petitioner would be
2  seeing a physician the following day to get his medications, but ADC doesn't give Oxycodone,
3  but petitioner would get Vicodine (she failed to write down in the progress note she made that
4  petitioner was on Oxycodone, Ativan, Welbutrin, Adderall). Petitioner also showed her the court
5  order that the Superior Court of San Bernardino; issued petitioner stating" jail staff to give
6  defendant medications as prescribed", and the prescription he had for Oxycodone that was issued
7  in February before petitioner was arrested. Petitioner didn't see a doctor for two days, and was
8  not given any of his medication, for those two days. May 13, 2014 petitioner saw Dr. Peter N.
9  Novalis; who refused to prescribe petitioners ADHD (petitioner has been on these medications
10 for over a year), and anxiety medication. Petitioner showed him the court order Dr. Novalis
11 stated that he didn't prescribe those medications and if petitioner wasn't happy he could take it
12 up with the court. Petitioner stated that he has been on several medications, but the only ones that
13 seemed to help petitioner were the ones he was taking prior to his incarceration. ON May 13,
14 2014 petitioner saw the east yard Nurse Practitioner Mrs. Perkins who stated she wouldn't give
15 petitioner the Oxycodone, but would prescribe tramadol, and increase his Gabapentin to 1200 mg
16 (the dose petitioner was on prior to his incarceration). Petitioner didn't receive the new
17 medications prescribed by Mrs. Perkins for three days. Finally petitioner asked the pill call nurse
18 to check and see if Mrs. Perkins prescribed petitioner any new medications. The following day
19 the nurse returned and told petitioner that there was no new prescriptions in his medical records.
20 May 14, 2014 Petitioner was called to medical. Mrs. Perkins stated she wanted a copy of
21 petitioner's court order, and the prescription for Oxycodone. She stated that she was going to
22 make a copy and send it to the Medical Director (I believe). Petitioner was given tramadol 50 mg
23 two times a day. Petitioner once again asked Mrs. Perkins if she could raise petitioner's
24 gabapentin n to 1200 mg three times a day. She stated she would make the change, but never did.

1  Approx. three days later petitioner was told by Mr. Lopez LVN that petitioner's medications got
2  denied. On May, 22, 2014 petitioner talked to Dr. Lawrence who raised petitioner's tramadol to
3  50 mg three times a day, and she said she would change petitioner's gabapentin to 1200 mg three
4  times a day, but she never did. Petitioner talked to Agent Carmack on approx. May 27, 2014
5  stated to him that he had a court order that wasn't being followed, and that he would like to get
6  his help enforcing the court order. Agent Carmack stated for petitioner to send him the court
7  order and prescription, and he would see what he could do. On May 27, 2014 petitioner received
8  a response from agent Carmack. He stated that he was forwarding petitoners request to Agent
9  Finnegan and Immigration health services. On June fourth petitioner received a response from
10 Mr. Finnegan. Mr. Finnegan stated that the court order was only temporary and that if I needed
11 medicines for me to fill out a sick call slip. June 06, 2014 petitioner saw Dr. Elatrozy, Dr.
12 Elatrozy said to petitioner "I am not worried about treating your ADHD. He refused to prescribe
13 petitioners ADHD medications and his anxiety medication. On June 10, 2014 petitioner talked to
14 deputy warden Faust; about petitioner not getting his medication. Deputy Warden Faust told
15 petitioner that he would go talk to medical, and about 30 minutes later he stated to petitioner that
16 he talked to the doctor and saw the court order and I should be seeing the doctor as soon as
17 available. On June 11, 2014 Petitioner was called to medical and talked to Nurse Practitioner
18 (NP) Perkins about Deputy Warden faust saying that petitioner did have a court order and should
19 be getting his medications. NP Perkins agreed with petitioner that he should be getting his
20 medications, but stated she couldn't just give petitioner Oxycodone; that first he had to be on
21 Vicodine and if that didn't work she would prescribe the Oxycodone. Mrs. Perkins prescribed
22 petitioner Vicodine 5/500mg two times a day and tramadol 50mg three times a day. That evening
23 petitioner talked to Warden A. Neil Clark, and told him he had a court order for medications that
24 medical staff refuse to give to petitioner. Warden Clark stated to petitioner that he would look

1  into it. That night petitioner was called to medical and told by Lynch R.N that all she could do is
2  schedule petitioner to see Dr. Lawrence on June 18, 2014. The following day (June 12, 2014)
3  petitioner talked to Mr. Lopez LVN (pill call nurse), and Mr. Lopez told petitioner that Mrs.
4  Perkins did write a prescription for Vicodine, but she cancelled it that day (on June 12, 2014).
5  Petitioner wrote a sick call slip stating that Mrs. Perkins prescribed petitioner Vicodine, but
6  cancelled it, that petitioner had a court order mandating he get his medications as prescribed, and
7  that petitioner has a valid prescription for oxycodone 10mg two times a day. That petitioner has
8  been on oxycodone for over a year, and that's the only thing that alleviates his pain, and that
9  petitioner wanted the medications he was entitled to. On June 13, 2014 petitioner received a
10 response from Dr. Lawrence stating that medical staff was not in violation of the court order; that
11 a court cannot mandate a physician to prescribe a particular medication ( petitioner contends that
12 if a physician can go to court, and get a court order mandating treatment; if good cause is shown,
13 then a patient can also get a court order mandating treatment; if good cause is shown ( I have the
14 court order and a valid prescription showing that I need this medication). Petitioner wasn't called
15 to see Dr. Lawrence on the 18th, so he filed a grievance (see attached grievance #    ). The
16 grievance was denied.  On June 26, 2014 Petitioner saw Deputy Warden Faust in his dorm.
17 Petitioner approached Mr. Faust and stated that petitioner still wasn't getting his medications as
18 mandated by the court order and him. Mr. Faust continued to tell petitioner that he never said
19 that petitioner was going to get his medications. On approx. June 30, 2014 petitioner was called
20 to medical to see a doctor. When he arrived at medical he was told that he would be seeing Dr.
21 Patel ADC Medical Director. Petitioner told Dr. Patel that he wasn't getting the pain
22 management that petitioner required, and that petitioner had a court order stating he needed to
23 get his medications as prescribed. Petitioner even should him his Oxycodone prescription (see
24 prescription attached to detainee request dated May 27, 2014). Petitioner told Dr. Patel that he

8

1 has been on a great deal of pain medications due to his Chronic Back Pain, and that he wanted
2 his Oxycodone to be prescribed. Dr. Patel said that this is a correctional setting and that those
3 medications are not prescribed here (petitioner contends that ADC is not a correctional setting
4 due to the fact that petitioner is not here service a sentence or fighting a new crime), and that the
5 only way petitioner would get any strong narcotic was if he just had surgery or had cancer.
6 Petitioner told him that NP Perkins prescribed petitioner Vicodine, but cancelled the order. Dr.
7 Patel said the only thing he would do for petitioner was raise his tramadol to 100 mg three times
8 a day. Petitioner asked him about getting his ADHD medication, and Dr. Patel stated that in this
9 setting they don't treat ADHD. Petitioner then told him that Dr. Elatrozy took him off the only
10 anxiety medications petitioner was on, and that he refused to give petitioner the medication he
11 needed to treat his anxiety. Dr. Patel said he wouldn't make any changes to petitioner psychiatric
12 medications. Petitioner asked Dr. Patel for a TENS unit for pain management since he wasn't
13 getting what he needed but once again Dr. Patel stated that he only
14 gives the pain medications or TENS unit petitioner needed in extreme cases such as surgery.
15
16 **EXHAUSTION OF ADMINISTRATIVE REMEDIES**
17 Petitioner has filed numerous grievances regarding all the issues raised in this petition and his
18 grievances have either been denied furiously, or the grievance coordinator at ADC refuses to
19 accept the grievances (see attached grievances). Mrs. Woelke has stated to petitioner that she is
20 going to start screening out petitioners grievances "for abusing the grievance system." Thus
21 petitioner contents that the administrative remedy process for administrative remedies here at
22 ADC is futile and inadequate and great injury and injustice will occur if petitioner is required to
23 attempt to exhaust his administrative remedies.
24

**PRAYER FOR RELIEF**

Petitioner is without remedy save by Injunctive Relief.

WHEREFORE, petitioner prays the Court:

1. Issue an Injunction mandating ADC Medical Staff to give petitioner medications he needs. Oxycodone 10 mg two times a day for pain, Adderall, and Welbutrin in the morning, for ADHD, and Ativan 1mg three times a day for anxiety. As petitioner has been prescribed in the past.

2. Issue an Injunction; mandating petitioner gets his unmonitored phone calls to seek representation or communicate with his appellate attorney.

3. Issue Injunction mandating ADC staff and ICE provide petitioner with the adequate legal materials needed to prepare and adequate defense and case.

4. Declare the rights of the parties

5. Preserve the right of petitioner to seek monetary damages in the near future, as petitioner deems necessary.

6. Issue temporary TRO mandating ADC staff refrain from any retaliation, or retribution or any other harm to petitioner for seeking relief through Courts

7. Appoint Counsel award reasonable attorney fees; and

8. Grant any other and further relief the Court deems proper.

Respectfully submitted,

*Begoña E. Riera*
Begoña E. Riera
Attorney-in-Fact
Rodolfo J. Roldan Riera

## VERIFICATION

I, Begona Elena Riera, state:

I am the petitioner in this action. I have read the foregoing Request for Emergency Injunctive Relief, and these facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Adelanto Detention Center, Adelanto CA on June 09, 2014.

*Begoña E. Riera*
Begona E. Riera for
Rodolfo J. Roldan Riera
Petitioner

BEGONA RIERA,
B4560336
~~B45336~~

Driver License Number

1

2

3

| | |
|---|---|
| Filename: | DFDFDFD |
| Directory: | E: |
| Template: | C:\Users\ADF-East\AppData\Roaming\Microsoft\Templates\Normal.dotm |
| Title: | |
| Subject: | |
| Author: | ADF-East |
| Keywords: | |
| Comments: | |
| Creation Date: | 7/1/2014 8:25:00 AM |
| Change Number: | 13 |
| Last Saved On: | 7/7/2014 8:19:00 AM |
| Last Saved By: | ADF-East |
| Total Editing Time: | 81 Minutes |
| Last Printed On: | 7/7/2014 8:50:00 AM |

As of Last Complete Printing
    Number of Pages: 12
    Number of Words: 3,417 (approx.)
    Number of Characters: 17,394 (approx.)

**(a) PLAINTIFFS** (Check box if you are representing yourself ☐)
RODOLFO J ROLDAN RIVERA.

**DEFENDANTS** (Check box if you are representing yourself ☐)
HOME LAND SECURITY

**(b) County of Residence of First Listed Plaintiff** SAN BERNARDINO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant SAN BERNARDINO
(IN U.S. PLAINTIFF CASES ONLY)

**(c) Attorneys** (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)
**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☒ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☒ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**    Case Number: EDCV14-01404 GHK AS

CV-71 (06/14)                CIVIL COVER SHEET                    Page 1 of 3

JUL 10 2014

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court?<br>☐ Yes ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br>☒ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right ➡ | ☐ YES. Your case will initially be assigned to the Southern Division.<br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>☐ NO. Continue to Question B.2. |
|---|---|---|
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right ➡ | ☒ YES. Your case will initially be assigned to the Eastern Division.<br>Enter "Eastern" in response to Question E, below, and continue from there.<br><br>☐ NO. Your case will initially be assigned to the Western Division.<br>Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br>☒ Yes ☐ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right ➡ | ☐ YES. Your case will initially be assigned to the Southern Division.<br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>☒ NO. Continue to Question C.2. |
|---|---|---|
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right ➡ | ☒ YES. Your case will initially be assigned to the Eastern Division.<br>Enter "Eastern" in response to Question E, below, and continue from there. Eastern<br><br>☐ NO. Your case will initially be assigned to the Western Division.<br>Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☒ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☒ | ☐ |

| D.1. Is there at least one answer in Column A?<br>☒ Yes ☐ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | D.2. Is there at least one answer in Column B?<br>☒ Yes ☐ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | EASTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?   ☐ NO   ☐ YES

If yes, list case number(s): _not sure._____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _[signature]_   DATE: 7/10/14

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |